UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ENERGY INTELLIGENCE GROUP, INC., ENERGY INTELLIGENCE GROUP (UK) LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>CALUMET GP, LLC, CALUMET REFINING, LLC.,<br><br>Defendants. | ) | No. 1:25-cv-01116-JRO-MG |

**ORDER DENYING DEFENDANTS' MOTION TO AMEND ANSWER, DIRECTING MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART JOINT MOTION TO MODIFY CASE MANAGEMENT PLAN**

This matter is before the Court on Defendants Calumet GP, LLC, and Calumet Refining, LLC's (collectively "Calumet") Motion for Leave to File Amended Answer and Counterclaim, [Filing No. 60]; and Joint Motion to Modify the Case Management Plan and Request New Trial Date, [Filing No. 73.]

## I. Background

EIG initially brought this action seeking to enforce its copyright of its newsletter, Oil Daily. EIG alleges that for years, Calumet improperly forwarded the newsletter to its employees, in violation of its subscription and of United States copyright law. On May 26, 2026, Calumet moved to amend its answer and add a counterclaim of fraud against EIG, in light of information it recently obtained in discovery. EIG opposes amendment. Calumet includes the following allegations in its amended answer and counterclaim, which the Court summarizes in part as the allegations relate to the instant motion to amend. For the purposes of the resolution of its motion to amend, these

allegations are taken to be true, with inferences drawn in favor of Calumet. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

EIG began providing Calumet with Oil Daily ("OD") on November 23, 1999. [Filing No. 60-1 at 24.] The subscription summary indicates that the subscription was for a customer named after a predecessor company to Calumet. [Filing No. 60-1 at 24.] The first addressee was Phillip Campel, VP of Marketing. [Filing No. 60-1 at 24.] At some point, the addressee was changed to Mr. Allen Moyes, VP of marketing. [Filing No. 60-1 at 24.] Beginning in 2004, although Mr. Moyes remained listed as the "Ship To" addressee of Calumet's OD subscription, it appears that the newsletter began to be sent to Ms. Rhonda Alford, an "executive/administrative assistant with Calumet and its predecessors." [Filing No. 60-1 at 24.] Mr. Moyes continued to be listed on the "Ship To" list for the subscription through approximately 2012, while the actual newsletter was being sent to Ms. Alford. [Filing No. 60-1 at 26.]

In 2006, EIG US started appending a "Copyright Statement" to its renewal notices but provided no specific notice of the change to its subscribers. [Filing No. 60-1 at 25.] In 2007, EIG US began including a notification in its renewal notices and later in its subscription agreements that the publication is "for the sole use and/or access by the individual(s) or the employee(s) of the entity identified under the 'Shipped to' notation on front of this Invoice only ('Authorized User(s)') and may not be shared electronically or by any means now known throughout the universe or hereinafter devised." [Filing No. 60-1 at 25.]

On November 15, 2011, Ms. Alford sent an email to Mr. Derrick Dent at EIG US indicating that "we would like to renew." Ms. Alford affixed her signature to the email identifying herself as "Executive Assistant." [Filing No. 60-1 at 27.] The form attached to Ms. Alford's email names "Mr. Allen Moyes VP Marketing, Calumet Lubricants Co." as the "Ship To" addressee. [Filing No. 60-

1 at 27.] On or about November 22, 2011, Mr. Jimmy Ramirez of EIG US contacted Mr. Dent regarding Ms. Alford's email, noting that Ms. Alford "is an executive assistant" and asking Mr. Dent to follow up with Calumet on the following issues: "Are iPad/Phone of use throughout Calumet – any interest with our app?" and "Can we learn more if there is interest for OD throughout Calumet?" Mr. Dent indicated "Will do." [Filing No. 60-1 at 27.] This exchange, according to Calumet, demonstrates that EIG was aware that Ms. Alford was not the target audience for the subscription, rather that Calumet was the "customer", while Ms. Alford was merely a conduit for the newsletter. [Filing No. 60-1 at 27–28.] When Ms. Alford informed EIG that Mr. Moyes was no longer with the company and that the OD newsletter should be sent to her, EIG registered this as an "address change" in its customer profile for Calumet. [Filing No. 60-1 at 28.] EIG then mistakenly entered Ms. Alford into its system as "VP Marketing" and changed the addressee to Ms. Alford. [Filing No. 60-1 at 28.] Renewals in 2013, 2014, and 2015 reflected this inaccuracy. [Filing No. 60-1 at 28–29.]

On March 22, 2016, Ms. Andrea Avila, a Purchasing Associate for Calumet, sent an email to Ms. Brown inquiring as to "why and what services we are paying for," and expressly asking her to "explain what is included in our subscription." [Filing No. 60-1 at 29.] EIG responded that "Ms. Alford is the named user. You are paying for a single copy of the Oil Daily publication delivered via email to Ms. Alford." [Filing No. 60-1 at 29.]

EIG began to send subscription notices to Ms. Avila, with the February 17, 2017 notice reflecting that Ms. Avila, Ms. Alford, and Calumet were all identified under "Bill to" and/or "Shipped to", and thus all a "subscriber" to OD. [Filing No. 60-1 at 29.] Ms. Avila again reached out to EIG regarding the subscription, which communication Calumet alleges "indicates a subsequent conversation between Ms. Avila and Mr. Dent. Mr. Dent also wrote in response that

the 'service' is 'Email' and the 'Users' 1, which, on information and belief, Ms. Avila understood to permit Ms. Alford to receive the daily emails on behalf of Calumet." [Filing No. 60-1 at 30.] Notably, a sales order from March 2017 reflected Calumet's predecessor company as the "END USER," with a delivery address to Ms. Alford. [Filing No. 60-1 at 30.] A 2019 invoice reflected similarly that Calumet was the customer, while other employees, including Ms. Alford, were "contact names" for "delivery." [Filing No. 60-1 at 31.]

Calumet again reached out to EIG in 2022 regarding their subscription and failed to get a response. Calumet alleges that, had EIG raised the copyright issues then, Calumet would have taken corrective action. [Filing No. 60-1 at 32.] Calumet alleges that, over the time of the subscription, EIG made no effort to explain the limitations of the subscription, never sought to confirm that Calumet changed any of the terms, nor ever expressly informed Ms. Alford that she was receiving the OD newsletter pursuant to a subscription, and that she was not permitted to share those transmissions with anyone else. [Filing No. 60-1 at 34.] According to Calumet, knowing that Ms. Alford was an administrative assistant "who would not consume OD content," EIG's agents engaged in fraud by deceiving her and others at Calumet into believing that the "subscriber" for OD was Calumet and its predecessors as a whole and failing to advise her that, under EIG's view of the subscription, only she was permitted to consume the OD content. [Filing No. 60-1 at 34.]

Calumet further alleges that this conduct is part of a larger pattern where EIG tracks the distribution of its publication and lies in wait to prosecute infringement as a means to feed its revenue stream. [Filing No. 60-1 at 35–39.] Thus, Calumet brings the instant counterclaim for common-law fraud under Indiana and New York law, stating that EIG engaged in fraud by misrepresenting the scope of the subscription, or at a minimum, by failing to alert Calumet as to the purported scope of the license, despite notice that its employees had a different view.

## II. Legal Standard

Leave to amend should be freely given when justice so requires absent considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." Fed. R. Civ. P. 15(a)(2); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519-520 (7th Cir. 2015). Also, "'the right to amend as a matter of course is not absolute,' and a district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading or could not survive a second motion to dismiss[.]'" *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (quoting *Crestview Vill. Apartments v. United States HUD*, 383 F.3d 552, 557 (7th Cir. 2004)).

## III. Analysis

EIG challenges the motion to amend the answer on grounds that Calumet lacks good cause to amend, that the proposed amendments would be futile, and that grant of the motion would unduly prejudice EIG. EIG's futility arguments are convincing, and thus the Court denies the motion to amend on that basis. The Court first clarifies which state's law applies to its analysis and then proceeds to analyze whether Calumet's proposed amendments are futile.

As a preliminary matter, the Court first determines whether Indiana or New York law applies to Calumet's proposed fraud counterclaim. In their proposed amendment, Calumet asserts a single counterclaim for "common law fraud under Indiana and New York law." [Filing No. 60-1 at 39] (citation modified). EIG's response in opposition addresses only Indiana law and contains no mention of New York law. *See* [Filing No. 62.] In a footnote in its reply, Calumet highlights the fact that EIG made no argument that Calumet's pleading is deficient under New York law, "despite

the fact that Calumet pleaded its counterclaim of fraud under both Indiana and New York law." [Filing No. 63 at 6 n.2.]

In *Erie R.R. Co. v. Tompkins,* the United States Supreme Court held that a federal court exercising its diversity jurisdiction is to apply the proper state's substantive law in its analysis. 304 U.S. 64, 78. (1938). When multiple states' laws may apply, as is the case here, "a district court sitting in diversity applies the choice of law rules of the state in which it sits." *Gillespie & Powers, Inc. v. Alcoa Warrick LLC*, 2023 WL 4744790 (S.D. Ind. Mar. 13, 2023), *objections overruled*, 2023 WL 12240605 (S.D. Ind. Mar. 29, 2023) (citing *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 774 (7th Cir. 2014)). "Under Indiana law, the choice of law analysis is a two-step process. (*Coldren v. Am. Gen. Life Ins. Co.*, 2012 WL 6045592, at *2 (S.D. Ind. Dec. 5, 2012) (citing *Simon v. United States*, 805 N.E.2d 798 (Ind.2004). First, the court must determine whether the differences between the laws of the states are "important enough to affect the outcome of the litigation." *Id.* (internal citations omitted). "[A] choice of law issue will be resolved only if it appears there is a difference in the laws of the potentially applicable jurisdictions.'" *Richardson v. Se. Conf.*, 612 F. Supp. 3d 753, 767 (N.D. Ill. 2020) (quoting *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). If the differences are important enough, "the traditional *lex loci delicti* rule (the place of the wrong) will apply." *Coldren,* 2012 WL 6045592, art *2 (citations omitted). This rule is overcome only if the place of the last wrong has little connection to the legal questions in issue. *Id.* However, "[i]f no party raises a choice of law issue to the district court, the federal court may simply apply the forum state's substantive law." *Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), *as amended* (Jan. 25, 2017).

Here, Calumet merely notes EIG's failure to address New York law but does not assert that the result under New York law would be different, much less offer any analysis to support such an

assertion. Nonetheless, out of an abundance of caution, the Court will proceed with the choice of law analysis. The first question is whether the difference between the law in New York and Indiana would change the outcome of this litigation. *See Simon*, 805 N.E.2d 798. As discussed later in this order, the Court finds the proposed amendments to be frivolous because Calumet's proposed amendments fail to plead a material misrepresentation that would substantiate a fraud claim.

Under Indiana law, the elements of fraud are as follows: "(1) a material misrepresentation of past or existing fact which (2) was untrue; (3) was made with knowledge of or in reckless ignorance of its falsity; (4) was made with the intent to deceive; (5) was rightfully relied upon by the complaining party; and (6) which proximately caused injury or damage." *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2014 WL 12756372, at *7 (S.D. Ind. May 15, 2014) (citation modified). Under New York law, "[t]he elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" *City of Long Beach v. Agostisi*, 221 A.D.3d 776, 778, 200 N.Y.S.3d 390, 394 (2023) (quoting *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d at 559, 883). While articulated a bit differently, both states' laws require a material misrepresentation of fact to state a claim for fraud. "While some components of a fraud claim vary from state to state, 'the fundamental elements of fraud are substantially similar from state to state.'" *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 1786290, at *4 (N.D. Cal. Apr. 15, 2024) (quoting *In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 4925368, at *12 (S.D. Fla. June 20, 2023)). While a "single different legal standard or higher burden of proof is generally sufficient to find that there is a substantial difference in the state's substantive laws", *Coldren,* 2012 WL 6045592, at *2, that does not seem to be the case here, as the essential element of fraud upon which this matter is decided appears to be the same.

Similarly, the Court finds no important difference between the states' laws when the fraud claim arises out of an omission. Under New York law, where a claim of fraud is based on an omission or concealment of material fact, the plaintiff must also allege that the defendant had a duty to disclose material information and failed to do so. *City of Long Beach,* 221 A.D.3d at 778 (citing *Schwatka v. Super Millwork, Inc.,* 106 A.D.3d 897, 900, 965 N.Y.S.2d 547 (2013); *High Tides, LLC v. DeMichele,* 88 A.D.3d 954, 957, 931 N.Y.S.2d 377 (2011)). Indiana law imposes a similar requirement, that for fraudulent concealment claims, a plaintiff must establish a duty to disclose certain facts to the plaintiff, that the defendant failed to do so, and that the plaintiff justifiably relief on the non-disclosure to its detriment. *HMBI, Inc. v. Schwartz*, 2009 WL 2905535, at *5 (N.D. Ind. Sept. 8, 2009) (citing *DeVoe Chevrolet–Cadillac, Inc. v. Cartwright*, 526 N.E.2d 1237, 1240 (Ind. Ct .App. 1988). In this case, the Court finds that Calumet failed to adequately plead that EIG owed any duty to actively inform Calumet about the scope of the subscription at issue, nor that EIG failed to do so as to substantiate a fraud claim. Therefore, the outcome of the Court's analysis is unchanged under the laws of either state. The Court therefore analyzes this motion to amend Calumet's answer under Indiana law.[1]

[1] Though the Court need not and does not reach the second step of the choice of law analysis, because the case originally arises out of allegedly tortious conduct committed in Indiana—the allegedly unlawful distribution of the newsletter—it is likely that even if there was an important difference between the two states' laws, Indiana law would nonetheless apply.

The gravamen of EIG's argument in opposition to Calumet's amendment is that Calumet fails to plead a material misrepresentation, an essential element of the claim of fraud. Calumet alleges that:

> EIG, and specifically, EIG US, through at least Ms. Brown and Mr. Dent, has engaged in fraud, as described in this Counterclaim and throughout, by misrepresenting to Calumet EIG's position on the scope of the subscription it purchased and/or, at a minimum by failing to alert anyone at Calumet as to the purported scope of the license, over a period of two decades, despite clear notice that Calumet and its employees, including at least Ms. Alford, had a different view.

[Filing No. 60-1 at 39.]

EIG argues that Calumet fails to identify a single misrepresentation of material fact that would satisfy the elements of fraud. Calumet disagrees, arguing that EIG designating anyone other than Calumet as the recipient of the subscription constitutes deceit. The Court agrees with EIG that Calumet fails to allege a misrepresentation or material omission of fact that substantiates a fraud claim.

Calumet points to several factual allegations to substantiate its argument. Calumet alleges that its employees used "we" to describe to EIG the recipient of the subscription, that EIG designated "Calumet" as the customer on its customer profile after Mr. Moyes left the company, that EIG through Mr. Dent failed to explain that paying for a "single copy" meant that Calumet was not permitted to forward the newsletter to its employees, and that no one from EIG expressly informed Ms. Alford that she was receiving the newsletter pursuant to a subscription that prohibited her from sharing the newsletter via email. *See* [Filing No. 60-1.]

In its proposed counterclaim and briefing, Calumet puts great emphasis on the fact that "Calumet", and not one of its employees, was listed as EIG's customer, while the subscription to

OD was being sent to Ms. Alford, who was designated as the "authorized user." Calumet argues that EIG knew that Ms. Alford, as an executive/administrative assistant, was not among the newsletter's intended audience and was thus induced by EIG into distributing the newsletter in violation of the scope of the subscription. The crux of the issue is that, regardless of whether it was Mr. Moyes, Ms. Alford, or Calumet itself who was listed as the recipient of the subscription, Calumet nonetheless received a *single* subscription, and Calumet fails to cite any instance where EIG misrepresented that fact. Regardless of which Calumet employee received the subscription, Calumet was still not authorized, at least according to EIG, to distribute the subscription through email. Therefore, not only is it unclear to the Court how listing Calumet as the customer constitutes a misrepresentation, it does not follow that Calumet being listed as the customer would allow Calumet and its employees to freely email the OD newsletter throughout the company while only paying for a single subscription. Calumet's argument is that it was induced into believing that, because Calumet was listed as the customer, any of its employees could freely send and receive the newsletter. In response, EIG correctly identifies the problem inherent in Calumet's allegations, namely, that the misrepresentation or omission of fact of which Calumet complains is actually neither but rather Calumet's employees' misunderstanding of copyright law. Calumet does not plead any facts indicating that EIG affirmatively told Calumet that it was permitted to make copies or to electronically forward the newsletter, rather only that EIG was vague about the nature of the subscription and failed to correct Calumet's misunderstanding. Therefore, the Court finds that Calumet failed to adequately plead any misrepresentation stemming from who EIG listed as the customer and/or registered user of the OD subscription.

That brings us to EIG's duty to correct Calumet's misunderstanding of the subscription. Calumet alleges that EIG knew that Ms. Alford was not the target audience for the subscription,

and that EIG had multiple opportunities to correct Calumet's clear misunderstanding of the scope of the subscription. *See* [Filing No. 60-1.] EIG argues that that, under Indiana law, absent a fiduciary duty or other very specific set of circumstances, a party to a business transaction does not owe a duty to speak. [Filing No. 62 at 10] (citing *Plummer v. Consol. City of Indianapolis, Dep't of Waterworks*, 2004 WL 2278740, at *20 (S.D. Ind. Aug. 17, 2004). In response, Calumet argues that it does not "need to plead a fiduciary relationship," because "EIG also omits the legal principle that once a party chooses to disclose facts within its knowledge, that party is not permitted to partially disclose the facts so as to 'create a false impression in the mind of the hearer by failing to fully reveal the true state of affairs.'" [Filing No. 63 at 8] (citing *Thompson v. Best*, 478 N.E.2d 79, 84 (Ind. Ct. App. 1985)). Calumet further argues that fraud "may apply in a buy-sell relationship where one party uniquely possesses the facts and thus enjoys a position of superiority, as EIG did here." [Filing No. 63 at 8] (citing *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2014 WL 12756372, at *12 (S.D. Ind. May 15, 2014)).

Here, Calumet fails to allege facts that demonstrate that EIG partially disclosed facts that created a false impression or that EIG uniquely possessed facts to the extent that it enjoyed a position of superiority in the transaction. Once again, the omitted fact—the prohibition on distribution of the newsletter—is a question of copyright law. On March 22, 2016, a purchasing associate for Calumet sent an email to one of EIG's employees inquiring about the scope of the OD subscription. [Filing No. 60-1 at 28.] EIG responded that "Ms. Alford is the named user. You are paying for a single copy of the Oil Daily publication delivered via email to Ms. Alford." [Filing No. 60-1 at 28.] Calumet alleges that EIG did not inform it that a "single copy" meant that Ms. Alford is only permitted to read the publication, or that she would not be permitted to forward the newsletter to its target audience. [Filing No. 60-1 at 28.] As the Court understands it, EIG's

statement here is not a half-truth or omission of fact, but rather an accurate description of the subscription Calumet had with EIG.

EIG argues, persuasively, that simply because it may have known that Ms. Alford was an administrative assistant, that knowledge was not enough to put it on notice that it was in fact *not* Ms. Alford who was reading the newsletter and that she was instead forwarding the subscription throughout the company contrary to its scope. Even drawing all possible inferences in Calumet's favor, the Court is not convinced that Ms. Alford's title and her statements to EIG put EIG on notice that she was not reading the newsletter. Moreover, as has been discussed, whether she herself was reading the newsletter is not the fact on which the case turns, as she could have properly distributed the newsletter pursuant to the scope of the subscription. Calumet squarely fails to allege facts that demonstrate the true nature of the subscription was hidden from their employees, and for that reason, its counterclaim would fail for failure to state a claim.

## IV. Motion to Modify Schedule and Direction for Summary Judgment

The parties jointly move to modify the case management plan and request a new trial date, in light of scheduling issues and discovery disputes. *See* [Filing No. 73.] The Court understands that the denial of Calumet's fraud counterclaim also significantly affects the contour of this case and the parties' discovery, specifically as it relates to third partes. The Court has reviewed this request and the proposed deadlines and will grant the parties' motion with slight modification. *See* [Filing No.73 at 3] (outlining the proposed new case management dates).

After a review of this case and discussion with the parties, the Court finds that resolution in this case would be greatly aided by partial summary judgment motions practice on the question of whether the statute of limitations for copyright claims will limit EIG's recovery. Calumet has represented to EIG and the Court that it intends to move for summary judgment on multiple

grounds, including statute of limitations. The Court directs the parties to conduct early summary judgment motions practice exclusively on the statute of limitations issue and will extend the deadline to file their remaining dispositive motions to forty-five days after an order on the statute of limitations question is issued. Calumet is directed to file a motion for *partial* summary judgment in support of its affirmative defense of statute of limitations largely barring EIG's claims no later than **November 20, 2026**, and the parties are directed to subsequently follow the briefing schedule outlined in Local Rule 56-1.

The Court understands that the parties have had difficulties scheduling depositions and hopes that the extended deadlines ensure that the parties can adequately complete discovery. To the extent they need any additional discovery for the partial motion for summary judgment on statute of limitations, the parties are expected to work together to accommodate schedules and find reasonable dates for the depositions, or the Court will set dates on its own.

## V. CONCLUSION

For the foregoing reasons, Calumet's motion to amend its answer is denied for futility reasons. In the interest of furthering narrowing the issues at bar, Calumet is directed to move for partial summary judgment on the statute of limitations issue.

**IT IS THEREFORE ORDERED THAT**

1. Calumet's Motion for Leave to File Amended Answer and Counterclaim, [Filing No. 60], is **DENIED**;
2. The parties' Joint Motion to Modify the Case Management Plan and Request New Trial Date, [Filing No. 73], is **GRANTED IN PART**;

a. Non-expert witness discovery (for the limited purpose of completing depositions of the party witnesses and already pending third-party discovery) is now due **Wednesday, October 21, 2026**;

b. Plaintiffs shall disclose the name, address, and vita of any expert witness, and shall serve the report required by Fed. R. Civ. P. 26(a)(2) no later than **Friday, November 20, 2026**;

c. Defendants shall disclose the name, address, and vita of any expert witness, and shall serve the report required by Fed. R. Civ. P. 26(a)(2) no later than **Wednesday, December 23, 2026;**

d. Expert witness discovery and discovery relating to damages shall be completed by **Friday, January 15, 2027;**

e. All parties shall file and serve their final witness and exhibit list no later than two weeks before Final Pretrial Conference with the Final Pretrial Order;

3. The Final Pretrial Conference set for February 2, 2027, and Trial set to begin February 22, 2027, are **VACATED**; to be reset by separate order:
4. Calumet shall file a motion for partial summary judgment in support of its affirmative defense of statute of limitations barring EIG's claims no later than **Friday**, **November 20, 2026**; and
5. All other dispositive motions shall be filed **no later than forty-five (45) days** after the issuance of an order on Calumet's motion for partial summary judgment.

Date: 9/21/2026

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution**:

Stephen M. Ankrom
Powley & Gibson, P.C.
smankrom@powleygibson.com

Jeff Barron
Barnes & Thornburg
jbarron@btlaw.com

Rylan Brook
Powley & Gibson, P.C.
rsbrook@powleygibson.com

Thomas H. Curtin
Powley & Gibson, P.C.
thcurtin@powleygibson.com

James M Gibson
Powley and Gibson P.C.
jmgibson@powleygibson.com

Alyssa Claire Hughes
BARNES & THORNBURG, LLP (Indianapolis)
alyssa.hughes@btlaw.com

Lyric Menges
Barnes & Thornburg LLP
lyric.menges@btlaw.com

Deborah Pollack-Milgate
BARNES & THORNBURG, LLP (Indianapolis)
dpollackmilgate@btlaw.com

Robert Powley
Powley & Gibson, P.C.
rlpowley@powleygibson.com